I'm George Wolfe for the Appellant. I'm Domenico. I'm doing business as quality consultants. This is a case under the, in part under the Miller Act and in part under the court's supplemental jurisdiction to recover statutory late payment penalties and attorney's fees under State, State statutes providing for those remedies. May I ask you a question on that? I mean, the fact that it was a proceeding under the Miller Act is, is very easy to see. Okay. The only thing I can see with respect to the California Business and Professions Code is a mention of it in the complaint. Is there any separate kind of claim under California State law, or do you think that that reference suffices? I don't think we were required to plead it, as far as I'm aware of, to plead the explicit statute. We didn't claim attorney's fees in the complaint. Yes, I know you did. And you think just simply referring to the statute is enough. I mean, we know you can't, or let's suppose, you may argue this, but suppose that it's clear you cannot get attorney's fees under the Miller Act. I know you argue that there's a distinction, but suppose that you can't. Have you adequately claimed attorney's fees as a matter of supplemental jurisdiction? Well, I don't think the question ever came up before the district court. No one raised that particular issue. It's an interesting issue. I think we have. I mean, it's certainly counsel has known from the very beginning that we were claiming that, that we were I guess you're not sure what Your Honor's point is on that. It's sort of a pleading issue? Well, I guess my point is if you cannot get attorney's fees under the Miller Act, and if the contract doesn't provide for them, which it did not, or for late penalties, which it did not, then under some case law, I think you can still proceed to try to get attorney's fees if there is a State law claim that was asserted in the trial court for whatever, attorney's fees, bad faith, maybe late penalties, anything like that. And so my predicate question to you was simply whether there was any supplemental claim made in the trial court. I believe we allege jurisdiction under 28 U.S.C. 1367. So we're saying whether there's a supplemental jurisdiction claim there. The jurisdiction is founded on a federal question. Well, the complaint, of course, says see, I'm confused because the complaint says the court has jurisdiction over the second and third causes of action based upon its pendant jurisdiction, and I can't find any second or third causes of action. Maybe it's just me. It may have been a typo. I'm not sure. Surely it was the second cause of action. The complaint says it's one for breach of contract and on the Miller Act. Yes. And then it asserts jurisdiction under the Miller Act, and then it says we have jurisdiction over the second and third causes of action based upon pendant jurisdiction. But I don't see any. I think when the complaint was originally drafted, there was a cause of action against another bond, a State license bond, that we took out of the case. Okay. And I think this is under Business and Professions Code 7071.5 or something on that order, and I think it was removed in the final drafting of the case. It may have been an error on my part not to. Well, I don't think that matters to this point anyway. But you have to – I mean, did you ever allege a violation of Business and Professions Code 7108.5? I'd have to refer it to the complaint. Well, I know you mentioned it. It's certainly not mentioned in the complaint itself, as I recall. It's mentioned. There's no question about it. Okay. Well, go ahead. I think you've answered my question. Let me ask you a question, Mr. Wolff. We got a phone message yesterday. The clerk received it and sent it to us that there were settlement discussions on this case again. I spoke to Mr. DeWitt yesterday about that, and we haven't really talked about anything specific. We just talked about, you know, that at some point we should talk some more about settlement of the case. Well, the time to talk about it is before we do more work on it is what I'm getting at. I think that's always a possibility. It seems like usually the mediations are earlier in the case. It's already been to mediation, hasn't it? It's been to mediation before this Court's mediation program, yes. Let me ask you a question. The underlying claim was for approximately $10,000, wasn't it? That's been paid. And there was interest, and that was paid. What is the amount in controversy now? The controversy is, I guess, under the State statute. No, the amount in controversy. How much are you? Oh, I'm not sure that you understand how large amounts are. Hundreds of dollars, thousands of dollars? No, well, maybe thousands of dollars. Under $2,000? As far as the late payment charge? I'm trying to figure out what the amount in controversy is at this point. I haven't figured that out recently, Your Honor. It's not in large numbers, really. Are you trying to recover the, at this stage in the game, are you trying to recover these fees and penalties against the bond or against the contractor himself? I guess we're trying to recover them against both parties. I think the law permits that. There is another case in this circuit that was reported concerning the same general contractor that appeared to suggest they might be insolvent or something on that order. So it may be just the sureties left over, right? Well, how do you get the sureties liable under California Business Code 7108.5? Our argument, if we go to the F.D. Rich case from 30 years ago, the court indicates that the attorney's fees aren't awardable in the absence of an applicable state statute governing disputes between private parties or a contract provision for providing for attorney's fees. No, I understand that. But I thought your theory was that under the California Business Code, the contractor was liable and therefore that constituted part of the Miller Act, right? Miller Act recovery. Well, the state law helps define the sums justly due under the Miller Act. Right. My question is, under what theory does that apply to sureties? Certainly, there's a line of cases that has held that, for example, prejudgment interest under state law is recoverable from the surety. Well, prejudgment interest is recoverable as a matter of Federal law, and we look to state law to see what the rate should be, different issue. I understand, but this, certainly the Miller Act doesn't say what's recoverable. The Miller Act just says sums justly due. The courts have looked to the contract between the parties. Which doesn't refer to late penalties or attorney's fees. It doesn't. So just by looking at the statutes, you couldn't get attorney's fees even if there was a contract provision for it. So the courts have developed sort of a common law of what is sums justly due. All right. So, Reed, let me return the question. What in the common law of sums justly due involves sureties in this particular context? What's your best case? Certainly, there's an argument that attorney's fees are recoverable if there's a contract provision. F.D. Rich seems to say that if there is a state statutory provision that applies attorney's fees to dispute between private parties, that then those fees could be recoverable from the Miller Act surety. The clear language of the opinion implies that result. I mean, the opinion talks about a lot of other things and talks about preferred policies and so on. But it also mentions that I don't have the exact language in front of me here, but. It's in part four of the opinion. And it's stated in our brief that in the absence of a state statute providing for the recovery of attorney's fees and disputes between private parties to construction disputes, attorney's fees are not recoverable under any state statute. And so the state law does provide a means to determine what sums are justly due. I mean, it's consistent with the result that you can get attorney's fees if there's a contract provision. It's consistent with the result that you can get late payment penalties if there's a contract provision. That's a decision of this circuit. It's consistent with the prejudgment interest decision. While prejudgment interest may be recoverable under Federal law, the Court looks to the state statute for the law. And other circuits have done so as well. Let me ask you this, Mr. Wolf. Suppose we were to hold that you can't recover fees of the penalties against the bond. Okay. Let's just assume for the sake of discussion we were to hold that you can't do that against the surety. Would you want us to remand the case to the district court so that you could pursue state claims against the contractor? I suppose to the extent that it's not one we have to explore whether the contractor is still around, I guess. I guess we'd ask for that relief and then whether we'd actually pursue that remedy would depend on whether or not there is still a contractor. I know there's no ---- Did you assert supplemental jurisdiction or dependent jurisdiction in the district court when you were there originally? I believe so. I was just looking at the second amended complaint here. I mean, did you ask the district court, not just in the complaint, but at the time of the summary judgment, or did you say, hey, we want to pursue these? The Court did decide the issue. Well, the Court doesn't appear to distinguish between the surety and the contractor. It just makes its ruling, and it's not entirely clear to me that that ruling is correct as to both. I think Judge Silverman is asking whether there's anything in your papers that distinguished between the liability of the contractor potentially for supplemental state claims and the liability of the surety under the Miller Act. I can't answer that question right off the top of my head. I certainly ---- the district court would have to have some basis for deciding the issue, and I think it was argued in the papers, but I can't really point my finger to it. Okay. Thanks. Okay. Would you like to save some time for ---- I would, Your Honor. As to the ---- your point about the 7108.5, it is mentioned on page 10 of our excerpts. It doesn't explicitly refer to attorney's fees, but it does refer to 7108.5 as it does on the last page, where it does specifically refer to attorney's fees pursuant to 7108.5. Okay. Thank you. Thank you. Thank you. Mr. Schneider. I'm not sure if I can fit my notebook, but I'm going to try. Good morning, Your Honors. My name is David Schneider. With me at the counsel table today is James DeWick of Sedgwick, Deere, Moran & Arnold. We represent the Appellee's Great American Insurance Company and North American Construction Company in this case. Who's still in this case? Is everybody still in this case? No. American National – well, my understanding, at least, is that American National Insurance Company is no longer a party because they were not included in the second notice of appeal. Okay. So the only – The contractor's still in. The contractor is still in. You're representing the contractor and Great American. Is that right? Right. And everybody else is out. Yes. There were only two other parties. One was named Centurion, and they were never included in the district court case, and the other was American National. There is no evidence presented as to them. The original appeal did include them in any case, but my understanding is they were not included in the second notice of appeal. If it were the case that the surety cannot be liable for late penalties or attorney's fees under the California Code section, why is it the case that the contractor might be on a supplemental claim? Well, I believe it's possible that the contractor could be on a supplemental theory. However, in this case, the single – the single statute, State statute that was cited in the Second Amendment complaints, the California Prompt Payment Act, doesn't apply, both because it's preempted and because on its face it doesn't apply to the facts of this case. Why doesn't it apply? The way the California Prompt Payment Act statute is written is that a contractor must pay sums due to the subcontractor upon receipt of payment from the owner for that. Well, yeah, but I think we've backed off of that, haven't we, as a matter of law? I can't remember the name of the case. Not that I'm aware of. In fact, there was a Fifth Circuit decision on a similar Louisiana statute that held exactly the – reached the same conclusion. It was a case – I won't give you the site. It's the one cited in our supplemental brief. The Cal J.C. Electric. The Cal J.C. Yeah. In that case, the Fifth Circuit had a similar Louisiana statute. It was actually a very similar case. What the Court ruled was that the subcontractor could proceed against the contractor on supplemental State law claims. In that case, though, it was somewhat different in that in that case it wasn't clear whether or not the contractor had been paid by the Federal government for the subcontractor's work. And so the Fifth Circuit remanded for a determination and said the subcontractor could only recover to the extent that the contractor was paid by the Federal government. But we had just held an opinion that Judge Paez wrote that that was not good law. I'll try to find it. Walton Technology, maybe? It's not one I'm familiar with. Pardon me? What did you say? That's not a case I'm familiar with. Was that a recent decision? Go ahead. Let me try to find it while you're at it. All right. Well, in any case, looking at the face of the statute and in this particular case, the only evidence in the record is that North American Construction Company did not bill the Federal government, in fact, didn't even include Quality Consultants' work in its bill to the Federal government. Whatever reason that might have been, whether they were they wanted to protect themselves from future liability or whether Appellant's theory is correct, the facts  are that the California Prompt Payment Act was never billed to the Federal government, therefore, North American was never paid by the Federal government for that work. And on the face of the California Prompt Payment Act, that means that the amounts are not payable to the subcontractor, the act doesn't apply, and there are no penalties or fees available. Even, however, if the act did apply on its face, it's preempted by the Federal Prompt Payment Act in this case. And that's because there's a clear conflict between the provisions of the two. The Federal Prompt Payment Act was enacted for the purpose of ensuring or striking a balance, really, between contractors and subcontractors to ensure that there would be proper payment by the government and timely payment by the government to contractors and by contractors to subcontractors. As noted in the congressional record, the purpose of that balance was to ensure that the contractors and subcontractors would bid on Federal projects and that the Federal government would get, would have contractors and subcontractors available, and ultimately the prices would go down from such competition. In considering what the appropriate balance was, Congress actually considered the penalty. Sotomayor, does the Federal act apply to this case? Yes. Why? Because it's incorporated by reference into the oral contract between North American and DiDomenico. Well, no. I mean, it's a matter of timing. I mean, does it – this case was well underway before it became law, wasn't it? No. No? So the Federal Prompt Payment Act applies? Yes. The Federal Prompt Payment Act was enacted, I believe, about 10 years – 10 years before this case was filed, a little bit less than that before the contract was entered into. I believe 1988 was when the last round of amendments were, or at least the relevant amendments were in that year. And this contract was actually entered into in the 90s. Okay. 1994, I believe. Let me ask you the same question I asked Mr. Wolf about a phone call that the clerk had about possibly settling the case. What's the status of that? Are you the fellow that spoke to the clerk about that? I am the fellow who spoke to the clerk. What's going on with that? We initiated settlement discussions yesterday morning. We have not received a response. And so at this point, there are no settlement discussions. I alerted the clerk because I didn't want to surprise the Court. If we did have settlement discussions and if we were successful, I thought it would be slightly rude to walk in the morning of the hearing and say, by the way, we settled. Would you know in a week whether it settles or not settles, or is that the – It depends on if and when we receive a response from the other side. Okay. I think the primary issue in this case is whether a subcontractor can recover attorneys' frees from a surety on a Federal Public Works project. And the answer to that was provided by the Supreme Court in the F.D. Rich case 30 years ago, almost to the day. It's a couple months short. And it was emphatically no. DiDomenico reads the case too narrowly. DiDomenico suggests that the case says that if there were a State statute that were applicable, then fees would be recoverable. But in fact, that's not what the case says. The Supreme Court said very broadly that the Miller Act provides a Federal cause of action and the scope of the remedy is governed by Federal, not State, law. And in fact, it distinguished between an interest payment and an attorney's fees payment, holding that an attorney's fees payment is far more crucial and far more central to the Federal system, that the Federal government follows the American rule, and that Congress had no intent to leave the decision on what rule to apply for attorney's fees to States. It gives us an example, the issue that Mr. Wolf referred to in his argument, of a Federal court attempting to discern State policy. It said one of the purposes in the F.D. Rich decision was to ensure that contractors didn't have to deal with a myriad of different State laws on the attorney's fees issue and that they would have a uniform national rule. As an example of one of the problems with not having a uniform national rule, the Court cited to the problem of a Federal court trying to discern State public policy, which was the situation in that case. That was merely one example of the problem. It could crop up in various different ways in various different States. And in fact, the amicus brief submitted in this case shows that each of the States has their own statutory provisions. There is no real consistency. Each State does it differently, and that's specifically what the F.D. Rich court was trying to avoid. DiDomenico also argues that California – that there's now a California statute, specifically Civil Code section 3260, that didn't exist when the F.D. Rich decision was issued and that creates an exception to the F.D. Rich or would lead to a different result under F.D. Rich. And as I was referring back to the language of the F.D. Rich case, that's clearly not the case. The F.D. Rich court issued a broad proclamation that Federal law applied. So regardless of what State statutes might exist now, the decision would not be any different. The example might be different that they give of what problems can arise, but the decision is still the same. Further, if you look at the statutes that Mr. Wolfe cites, the Second Amendment doesn't make reference to anything other than California Business and Professions Code section 7108.5 of the California Prompt Payment Act. So it's not clear that any of them would apply anyways in this case. Even if they did, on their face, they don't apply. Specifically, Civil Code section 3260 says that it only applies to contracts on a private work of improvement. However you might define the contracts in this case, however you might define the parties, it's clear that this was a public work. It was an Air Force base. It's a public work of improvement. It falls outside the scope of any of the California statutes. The additional argument made in this case is that section 3905J of the Prompt Payment Act somehow expands the rights available to the subcontractor and creates additional rights that didn't previously exist or somehow overrules F.D. Rich. As a preliminary matter, DiDomenico makes the argument that the Federal Prompt Payment Act is not a part of this contract. As I've told the Court, we disagree with that conclusion. We believe it is incorporated by reference. But if DiDomenico is right and it's not a part of the contract, then they can't come to this Court and argue that it creates new rights for them if it doesn't even apply. Looking at the face of section 3905J, it says in the text that it preserves administrative, contractual or judicial remedies that are otherwise available. Just on that plain language alone, it's clear that it didn't intend to create any new rights that didn't previously exist. It's meant to maintain existing rights. And, in fact, if you refer to the congressional record and the history, Congress doesn't specifically talk about section 3905J. But in the congressional record, they talk about I and J together. I is the provision that says that the subcontractor can't maintain a suit separately against the Federal Government. And what they say is that the purpose of these clauses is to make it clear that a subcontractor that isn't paid timely on a project can't come back and recover from the Federal Government. What they have instead are the penalties provided by this new Act and any other remedies that they would have had before, such as a breach of contract action or a Miller Act claim. It's a standard type of provision, and, in fact, it actually you can find it in the California Prompt Payment Act. They have a virtually identical term. And it's clear that the purpose of these terms is not to create new rights that didn't previously exist, but to make it clear that by enacting a penalty and a statute, Congress or the California Prompt Payment Act's case, the California legislature, didn't intend to take away any other causes of action or rights that they have that the subcontractor would otherwise have. Finally, when looking at section 3905J, it's inconceivable that Congress would overrule what has been the set law of the land for nearly 30 years, the F.D. Rich case, without even a mention of it. It's not mentioned in the text. It's not mentioned in the congressional record. It's clear that Congress is aware of the F.D. Rich case. It's mentioned in other – in connection with other statutes. It's mentioned in other congressional history. Yet they make no mention of it here. The intent, obviously, was to preserve existing rights, not to change the law and create new rights that weren't previously there. Regardless of what recovery there might be available against the surety under the Miller Act specifically, Domenico first has to establish a right to attorney's fees or penalties under State law, and it has failed to do that here.     The Federal Prompt Payment Act does not provide for a recovery of attorney's fees. It does not provide for a penalty. Congress specifically, in enacting the law, considered a penalty. There was a proposal to have a two-and-a-half-time interest penalty. And in the footnotes in the congressional record, Congress specifically said that such a penalty would be too harsh and would go beyond the goals that they were attempting to accomplish. That's particularly important in considering the preemption argument because it creates a conflict between the California statute and the Federal Prompt Payment Act. Both are intended to ensure prompt payment to contractors and subcontractors, and both accomplish this purpose in different ways. The Federal Prompt Payment Act sets an interest penalty, basically says that if a sub – if a contractor fails to pay a subcontractor, or actually if the Federal government fails to pay a contractor, that they'll have to pay an automatic interest penalty at a rate specified in the Prompt Payment Act from the date of the failure to pay until the amounts are paid. Congress determined that that was the appropriate penalty, that that would maximize the benefits and detriments such that they would encourage both contractors and subcontractors to work on Federal projects. It sets that as the minimum baseline. It does allow the parties to the contract to negotiate different terms that they want, but it keeps a statutory minimum and, I guess, in a sense, a statutory maximum. The California Act imposes exactly what Congress felt was inappropriate. It imposes a 2 percent penalty and it imposes an attorney's fee award. Those are two measures that Congress specifically chose not to enact. And what the California Prompt Payment Act would essentially do if applied in this case is it would take the Federal minimums, it would take the balancing that the Federal government did, and throw it out the window. It would say, we don't care what Congress did, we're going to impose our own minimums. And from the perspective of a contractor on a Federal project, that means that every State that they intend to work on, whether it's one they've worked in before or not, they have to look at what the laws are in that State, probably hire a lawyer, go figure out what the laws are in that State, figure out what kind of penalties they might face if they don't promptly pay, and conceivably face penalties that are for – that are disproportionate and foreign to what they're used to. Instead of having the Prompt Payment Act, which sets a minimum that they can predict, that they know how to deal with, that probably is in line with what they're used to, they would be faced with a myriad of different State laws, all imposing different standards, some of which could be particularly harsh, the net result of which would be to drive contractors away from Federal projects and undermine exactly what the Federal government was trying to achieve in passing the Prompt Payment Act. I think I've already covered the application of the State statute in this case. If there are any questions, I'll address them, otherwise I think that's been addressed. All right. One last comment. In this case, when Congress was considering the Prompt Payment Act, they took significant testimony from the American Subcontractors Association, who submitted the amicus brief in this case. They considered that testimony. They considered the interests of all the parties. And based on the information that they had before them, they decided what the appropriate balance would be. They set an interest penalty and determined that that was the right way to go and the best way to achieve their goals of encouraging contractors and subcontractors to work on Federal projects. In this case, DiDomenico and the American Subcontractors Association are trying to get from this Court what they couldn't get from Congress. Congress has already decided that there are no fees available to a subcontractor and no penalties available to a subcontractor claiming against a contractor on a Federal public works project. The Supreme Court has already decided that you cannot get attorney's fees against a surety on a Miller Act bond claim. Therefore, the district court's order granting summary judgment in this case was appropriate and should be upheld. Thank you, counsel. Mr. Walden. Thank you, Your Honor. How much time do I have? Six and a half minutes. Okay. I remember when I was in law school, I was told the first year that the holding of the court is the facts of the case and the result reached by the court on the facts of the case. And the other language in the opinion, while perhaps very instructive or brilliantly written, is not necessarily the holding of the court. In the F.D. Rich case, the court went on and talked about a number of things that weren't necessary to the decision of the case before it, including whether or not there should be a national rule on attorney's fees in the replies across the board in every state. Certainly, it was expressing its opinion as to policy or future legislation on the subject, but it certainly wasn't part of their opinion, the holding in that case. And the Supreme Court in F.D. Rich only had before it the use of the divining of this public policy from Civil Code section 3250, what is now Civil Code section 3250. And it was only reviewing whether or not that divining that public policy and attorney's fees from that statute was appropriate, because other circuits had done similar things and the court addressed that issue. It talks about other things, but it doesn't prohibit the result we're asking for here. The Supreme Court did not hold that the Miller Act preempts all the use of all State law rules. It did not hold that the State law could never define what sums are justly due. And Congress has been supremely silent on what is sums justly due in the last 30 years. There is no national statute. There is no other policy. All we have is a policy that says if there's a contract provision, yes, contracts are interpreted under this system. The contract between the subcontractor and the general contractor are considered private contracts and they are interpreted according to State law. That's according to this circuit in the Laro case. So we don't think there was a broad holding that the counsel is arguing for, and that the subsequent development of the law mandates a different result here today in this case, because there is a statute, more than one statute, that governs disputes between private parties, and these are private parties, the contractor and subcontractor. The contract subcontracts are not regulated by Federal law except perhaps as set forth in a Prompt Payment Act, which doesn't really regulate the contracts. It just says what's supposed to be included in the subcontract. It doesn't provide a remedy if the provisions aren't followed. I think the question of whether State law can apply was at least in the supplemental jurisdiction case was decided by the Fifth Circuit in the famous construction company case from a year or two ago, and I think that issue has been resolved. The public policy does require that there be a different result here today. Most of the work on projects are done by subcontractors. I think somebody said in the legislative history here that 80 percent of the work on these jobs is done by subcontractors. Without some remedy for late payments, such as exists under State law, there is a disincentive for contractors to, subcontractors, to work on Federal projects, and the legislative history of the amendments to the Prompt Payment Act indicate that there is a need to promote subcontractors to bid on Federal jobs and keep the cost down. Many, many of these are not. Kennedy, wouldn't a written contract cure that? They had a written contract providing for these? It would, but in certain cases, certainly the general contractor, especially after it's been awarded the job, has a lot of leverage over subcontractors and what terms are going to be in there. If a subcontractor doesn't like the contract, sometimes he's stuck with it. On the other hand, there are some of these. So if he's stuck with it, he's stuck with it? He's stuck with it or he's stuck with walking away and not working on that job and have maybe a higher bidder work on the job. Right. The – a lot of the subcontract work is highly specialized. Some of it involves proprietary systems, such as the systems that were used in this building when it was retrofitted. Sometimes there is no other source for that material, for that work. There's only one or two. If those people don't want to work on the job, there's a – and they can't get the remedies they have under State contracts and private contracts, there's a disincentive for them to work on the Federal project. And certainly that's the case here in the case of quality consultants. Quality consultants stood in for the United States and inspected the quality of this job. And one can see that if the general contractor has the ability to withhold money from the subcontractor without penalty and without consequences, that the – he can exercise undue influence over someone, such as quality consultants, in performance of his work, which is crucial to the – to the job. So we think the FDRICH case, the holding – the actual holding in FDRICH case, rather than the broad language of the decision, the state of the law currently in California and elsewhere across the country, there's a myriad of States now that have these late payment penalties and attorney fees provisions, because subcontractors don't get paid. And the public policy require a different result than counsel was arguing for, require that these – these remedies be available under supplemental jurisdiction of the court and be part of what sums are justly due. The Miller Act doesn't say what sums are justly due. Congress hasn't spoken on that subject. The courts have defined it. Certainly, this Court's case in the Civil Codes Section 1717 decision comes quite close to the result we're asking for today, the Reed v. Callahan case, where it applied Civil Code Section 1717 to make applicable to a – an action by a subcontractor of the attorney's fees provision in the contract where the attorney's fees provision was unilateral before. Thank you, Your Honor. Thank you, Mr. Wolf. Counsel, both of you, we appreciate your argument. The matter just argued will be submitted and the court will stand adjourned.
judges: Rymer, Thomas, Silverman